■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY LOVE, Appellant. — Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered January 23, 1979, convicting defendant, after a nonjury trial, of the crimes of burglary in the third degree and grand larceny in the third degree. At issue on this appeal is whether the People proved that defendant made a knowing and intelligent waiver of his *Miranda* rights. Defendant contends that his oral statements should have been suppressed because at the time the statements were made he was in the custody of the Department of Mental Hygiene, pursuant to CPL 330.20, on an order issued on February 3, 1977 following his acquittal of a burglary charge by reason of insanity. The statements were obtained from defendant on July 26, 1978 at the Capital District Psychiatric Center where defendant was then confined. The crime occurred earlier that same day. Defendant claims that proof of his mental condition was essential in order to permit the court to determine the issue of waiver. Defendant's contention should be rejected. The burden of persuasion on a motion such as this rests with the defendant when the People in the first instance establish the legality of police conduct and defendant's waiver, as they have here (see *People v De Stefano,* 38 NY2d 640, 651, 652). The prosecution introduced sufficient testimony from the officer present to establish defendant's knowing and intelligent waiver of his constitutional rights. Defendant responded to the officer's questions in an intelligent and direct manner indicating he understood the language and its import. The circumstances herein are much different from those in *People v White* (85 AD2d 787), where the defendant's confession was disjointed and disorganized and defendant demonstrated a lack of understanding of his rights. We note also that the defendant herein never took the stand or offered any evidence at the hearing to refute his demonstrated intelligent waiver. Moreover, there is a strong presumption that a person is sane and there was absolutely no evidence introduced at the *Huntley* hearing to raise an issue as to defendant's sanity. We find it significant that defendant did not call the hearing court's attention to the fact that he had been committed to the custody of the Mental Hygiene Department. It appears that defense counsel sought to avoid bringing in the medical records and history of defendant as a matter of trial strategy. Finally, we note too that the moving papers submitted by defendant do not indicate that he was suffering from any mental defect or deficiency that impaired his ability to waive his rights at the time the oral statement was obtained. Defendant's other claim that he was denied effective assistance of counsel is also not sustained by the record. The psychiatric evidence developed at trial

established that defendant's mental condition, under the law, did not absolve him from responsibility for his actions at the time of the commission of the crime. Further, that evidence also showed that defendant, when he was interviewed by the police on the night of the crime, was not suffering from any mental defect or deficiency which would have rendered his statements involuntary. It appears defense counsel had a difficult case to defend, and, because the trial strategies and techniques employed proved unsuccessful, it cannot be concluded on this record, as a matter of law, that defendant was denied the effective assistance of counsel. The defendant's request for reduction of sentence must also be denied. We find no abuse of discretion in the sentence imposed. Judgment affirmed. Sweeney, Kane, Casey and Mikoll, JJ., concur.

Mahoney, P. J., dissents and votes to reverse in the following memorandum. Mahoney, P. J. (dissenting). Following his indictment for burglary in the third degree and grand larceny in the third degree, defendant moved to suppress an oral statement he allegedly made to police on the day the crimes occurred. At the suppression hearing, a police officer testified that during his investigation of the afore-mentioned crimes, he questioned defendant at the Capital District Psychiatric Center. According to the officer, defendant was read his *Miranda* rights, indicated that he understood these rights and wished to waive them, and gave an inculpatory oral statement. It appears that defendant had been committed to the custody of the Department of Mental Hygiene pursuant to a CPL 330.20 order and was a patient at the psychiatric center. Following the denial of his suppression motion, defendant was convicted after a nonjury trial on both counts of the indictment. This appeal ensued. In my view, the People have not sustained their burden of showing that defendant made a voluntary, knowing and intelligent waiver of his Fifth Amendment privilege against self incrimination. Such a waiver must be proven by the People beyond a reasonable doubt (*People v Valerius,* 31 NY2d 51, 55). The record before the suppression court shows only that defendant was advised of his rights from the officer's *Miranda* card, answered "yes" to the questions of whether he understood his rights and wished to waive them, and then gave an incriminating statement. In *People v Bruce* (62 AD2d 1073), this court held that a similar record did not support a finding of waiver where the police had reason to suspect the defendant's mental competence. In the instant case, I would hold that, as a matter of law, when police go to a psychiatric center to question an individual they know to be confined there, they have reason to suspect that person's mental competence. They must then do more than show the mere recitation of *Miranda* rights and a monosyllabic response before they will be found to have met their heavy burden in proving the voluntariness of defendant's waiver (see *People v White,* 85 AD2d 787). Accordingly, I would reverse the judgment of conviction, grant defendant's motion to suppress his oral statement, and remit the matter to the County Court of Albany County for a new trial.